# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HOWARD T. TYSON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-2087 (KBJ) |
| | ) | |
| MEGAN J. BRENNAN, *Postmaster General*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pro se plaintiff Howard T. Tyson, Sr., a former employee of the United States Postal Service ("USPS" or "Postal Service"), has filed the instant employment discrimination action against Defendant Megan Brennan, the U.S. Postmaster General (in her official capacity).[1] The complaint appears to contend that the Postal Service discriminated against Tyson on the basis of his disability and also retaliated against him for engaging in a protected activity, when it issued a notice of proposed suspension to him after he surreptitiously used his mobile phone to record his supervisor. (Compl., ECF No. 1, at 1–2 ¶¶ 1–5.)[2] As relief, Tyson asks "that the agency be made to

---

[1] None of the allegations in this pro se complaint suggests that General Brennan is being sued in her individual capacity; therefore, the Court will assume that she is being sued in her official capacity only. As a result, this suit functions as an action against the Postal Service, *see Cty. Bd. of Arlington v. U.S. Dep't of Transp.*, 705 F. Supp. 2d 25, 28 (D.D.C. 2010) ("[A]n official-capacity suit is a way of pleading an action against the agency which the official heads."), and will be treated as such for purposes of this Memorandum Opinion.

[2] Page numbers cited herein refer to those that the Court's electronic case-filing system automatically assigns. The paragraph numbers that Tyson uses in his complaint are not sequential, and therefore when citing to the complaint in this matter, the Court refers to both the ECF-assigned page number and any paragraph number that Tyson has used.

surrender[] the sum of $100,000[,]" in addition to punitive damages of $75,000. (*Id.* at 9.)

Before this Court at present is USPS's motion to dismiss Tyson's complaint. (*See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 12; Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 12–1). USPS argues that Tyson's discrimination claim— which the Postal Service interprets as having been brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796l (*see* Def.'s Mem. at 5)—fails because Tyson has not established that any adverse action was taken against him, or that the Postal Service took any action against him with discriminatory or retaliatory intent (*id.* at 8–13). The Postal Service further maintains that Tyson has not pled facts showing that he engaged in a protected activity (which is a prerequisite for stating a valid retaliation claim) and that Tyson failed to exhaust his administrative remedies with respect to his retaliation claim. (*Id.* at 13–14.)

For the reasons explained below, this Court concludes that the allegations contained in Tyson's complaint are insufficient to state a plausible claim for disability discrimination in violation of the Rehabilitation Act, because he has not pled facts showing that he suffered an actionable adverse action, and therefore his discrimination claim must be dismissed. And the same fate awaits Tyson's claim for retaliation, because Tyson concedes that he has failed to exhaust administrative remedies with respect to his retaliation claim—which, in the Rehabilitation Act context, is a jurisdictional defect that cannot be overcome—the retaliation claim must be dismissed as well.

Accordingly, USPS's motion to dismiss Tyson's entire complaint will be **GRANTED**. A separate Order consistent with this Memorandum Opinion will follow.

I. BACKGROUND

A. Facts[3]

Tyson is a former employee of the United States Postal Service who was working in a limited duty status due to back surgery in the spring of 2015 when the events at issue in this case took place. (*See* Compl. at 2 ¶ 2.)[4] Tyson alleges that his supervisor, Brian Kim, approached him in March 2015, and questioned him about overtime that Tyson purportedly had worked the prior evening; Kim apparently believed that USPS policy prohibited Tyson from working overtime while he was on limited duty status. (*See id.* at 3–4 ¶ 2.) Two hours later, after Tyson's union chair had confirmed to Kim that Tyson's work was "regulated[,]" Kim allegedly approached Tyson again, and "suggested that [Tyson] owe[d Kim] a dollar for doing overtime" (*id.*)—an amount that Tyson allegedly paid to Kim. (*See id.*) Tyson interpreted Kim's comments as suggesting that Tyson would not be permitted to work overtime hours unless he paid Kim. (*See id.* at 2 ¶ 3; *id.* at 3–4 ¶ 2.)[5]

On April 2, 2015, Tyson allegedly observed "Kim's extended hand, rubbing his middle finger and thumb, which indicated money." (*Id.* at 4–5 ¶ 3.) The complaint

---

[3] The background facts that are recited in this Opinion are drawn from the allegations in Tyson's complaint, which must be taken as true for the purposes of the instant motion to dismiss. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015).

[4] Tyson retired on September 8, 2015, for reasons that he does not specify, and the reasons for his retirement are not at issue in this case. (*See* Compl. at 6 ¶ 7.)

[5] According to Tyson's complaint, Kim's demand for money happened again two months later, on May 29, 2015, when Kim "said [Tyson] owed him a dollar, which [Tyson] paid." (*Id.* at 2 ¶ 2.)

contends that Kim "continued to request money" from Tyson, and that Tyson "felt threatened, and that [he] had to do something, or else this was going to get rough." (*Id*.) Tyson's solution was to "turn[ his] phone on recording" so that he could document Kim's conduct and report it to management. (*Id*.)

One month later, on May 3, 2015, Tyson allegedly approached General Manager Kelvin Williams regarding the April incident. (*See id*.) Williams asked to hear the recording but Tyson declined to share it, stating that he "need[ed] to pray about this[.]" (*Id*.) Later, when Tyson was unable to contact Williams, he reached out to Manager Yolanda Sanders instead. (*See id*. at 5 ¶ 4.) According to Tyson's complaint, "[a]fter Sanders heard the recording[,] she left the room and came back[ and] instructed [Tyson] to not share [the recording] with any one [sic] else." (*Id*.) Sanders then reported these events to Phyllis Busch (*see id*.), and on June 3, 2015, Burch issued the notice of proposed suspension at issue in this case, which provides:

> On April 6, 2015, while assigned to the Flat Sequencing Sorter . . . you were in a conversation with Supervisor Brian Kim. You recorded with your personal cellular telephone . . . some of the conversation between you two without the permission of Supervisor Brian Kim. . . .
>
> Your conduct as outlined above is unacceptable and is in violation of the following postal rules and regulations including, but not limited to[,] the USPS Capital District (HR-11-SH-011) dated March 15, 2011 and the Employee and Labor Relations Manual (ELM) sections:
>
> 665.11 Loyalty . . . .
>
> 665.16 Behavior and Personal Habits . . . [and]
>
> 667.2 Interception of Oral or Wire Communications by Postal Employees . . . .

4

(Notice of 7-Day Suspension (June 3, 2015) ("Suspension Notice"), Ex. 1 to Compl., ECF No. 1, at 10–11.) The Suspension Notice advised Tyson of his "right to file a grievance within 14 days of [his] receipt of th[e] notice." (*Id*. at 12.)

### B. Procedural History

In August of 2015, Tyson filed an administrative complaint regarding the Suspension Notice. (*See* EEO Compl. of Discrimination in the Postal Serv. (Aug. 20, 2015) ("EEO Compl."), Ex. 2 to Def.'s Mem., ECF No. 12-3.) In his administrative complaint, Tyson referred to himself as "a whistleblower[,]" and in the section of the complaint form that asks what "Type of Discrimination You Are Alleging[,]" Tyson checked the box for "Disability" discrimination and specified "Physical." (*Id.* at 2.) Tyson also checked the box for "Retaliation[,]" but next to this designation he also handwrote "No[.]" (*Id.*)[6]

The Postal Service issued its final decision on Tyson's administrative complaint on January 22, 2016. (*See* Final Agency Decision, Agency Case No. 1K-206-0035-15 ("Final Agency Decision"), Ex. 4 to Def.'s Mem., ECF No. 12-5.) In that decision, the EEO analyst specifically remarked that "[d]uring the course of this investigation, [Tyson] withdrew his claim of retaliation[.]" (*Id.* at 2.) And she further concluded that

---

[6] In the affidavit that Tyson filed with the Postal Service's EEO office in support of his administrative complaint—which has presumably been incorporated into the instant complaint due to the complaint's specific reference to "the agency case number (1K-206-0035-15)" and its express reliance on the agency case "to show that this case was filed against the agency" (Compl. ¶ 1); *cf. Crawford v. Duke*, 867 F.3d 103, 107–08 (D.C. Cir. 2017)—Tyson is similarly equivocal about whether or not he intends to assert a claim for retaliation. For example, in response to the affidavit form's question, "Are you claiming retaliation as a factor for this claim?", Tyson answers "No." (EEO Investigative Aff. (Complainant), Ex. 3 to Def.'s Mem., ECF No. 12-4, at 5.) But a subsequent section in the same form asks, "Why do you believe the activity for which the Retaliation claim is based on is a factor in this claim?" and Tyson proceeds to discuss his theory that he had been subjected to disciplinary action because, based on his claims that Kim had asked him for money, "they [k]new they had to get me[.]" (*Id.* at 10.)

5

"the evidence does not support a finding that [Tyson] was subjected to discrimination as alleged." (*Id.* at 12.)

Tyson filed the complaint in the instant action on October 20, 2016, alleging that the Postal Service discriminated and retaliated against him when it issued the Suspension Notice. (*See generally* Compl.) The Postal Service has moved to dismiss Tyson's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Tyson has failed to state a claim for either discrimination or retaliation in violation of the Retaliation Act, both because the allegations of the complaint are insufficient to give rise to any such claim (*see* Def.'s Mem. at 8–13), and because Tyson's retaliation claim is "unexhausted" (*id.* at 13).

USPS's motion is now ripe for the Court's review. (*See* Pl.'s Opp'n to Dismiss, ECF No. 20 ("Pl.'s Opp'n"); Reply in Supp. of Def.'s Mot. to Dismiss, ECF No. 21; Pl. in Opp'n to Dismiss, ECF No. 22).[7]

---

[7] USPS captioned and docketed its filing as a motion to dismiss (*see* Def.'s Mot.), and, accordingly, this Court issued an order apprising Tyson of the consequences of failing to respond to such a motion. (*See* Order of Feb. 3, 2017, ECF No. 13, at 2–3). *See also Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988). However, in the text of its motion, USPS alternatively asks this Court to treat its motion as one for summary judgment under Federal Rule of Civil Procedure 56 and to consider a letter, appended as an exhibit, in which USPS agreed to rescind Tyson's notice of suspension. (*See* Def.'s Mem. at 8, 10–11.) Given the fact that USPS failed to comply with this Court's Local Rules regarding briefing motions for summary judgment, *see* LCvR 7(h), and that the Court did not solicit a more detailed response from Tyson through the issuance of a *Fox/Neal* order as a result, *see Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), this Court declines USPS's invitation to convert its motion to dismiss into one for summary judgment. *See Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 192 (D.D.C. 2016) ("[T]he decision regarding whether or not to treat a motion to dismiss as one for summary judgment is committed to the sound discretion of the trial court[,] which means that this Court need not necessarily accede to [the defendant's] request regarding how its motion should be evaluated.") (internal quotation marks and citations omitted) (second alteration in original).

## II.  LEGAL STANDARDS

### A.  Motions To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)

A motion under Rule 12(b)(6) raises the question of whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Harris*, 791 F.3d at 68 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Supreme Court has explained that the key to making this evaluation is determining whether the allegations are sufficient to permit a "reasonable inference that the defendant is liable for the misconduct alleged[.]"  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (internal quotation marks and citation omitted).  In this regard, the "court must accept as true all of the allegations contained in a complaint[,]" but this tenet "is inapplicable to legal conclusions."  *Harris*, 791 F.3d at 68 (quoting *Iqbal*, 556 U.S. at 678).  This means that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  In addition, Rule 12(b)(6) "places th[e] burden on the moving party" to show that the complaint is legally insufficient.  *Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)).

When analyzing a motion to dismiss brought under Rule 12(b)(6), the court must limit its analysis to the four corners of the complaint, as well as any "documents attached as exhibits or incorporated by reference, documents upon which the plaintiff's complaint necessarily relies, and facts of which the Court may take judicial notice."  *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9 (D.D.C. 2016).  Among the documents that are subject to judicial notice in the context of an employment discrimination case are

7

the plaintiff's administrative complaint and the agency's final decision on that complaint. *See id.* at 10; *Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 28 n.2, (D.D.C. 2016) ("[T]he Administrative Judge's Initial Decision, Treasury's Final Agency Decision, and [the Merit Systems Protection Board]'s Final Order are official, public documents subject to judicial notice.") (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

### B. Dismissal Under Federal Rule of Civil Procedure 12(b)(1) For Lack of Jurisdiction

Notably, "a failure to exhaust administrative remedies for Rehabilitation Act claims is a *jurisdictional* defect, requiring dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011) (emphasis in original). It is settled that the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002). Furthermore, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is mandatory when a plaintiff fails to meet this burden. *Muhammed v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

The evaluation of a motion to dismiss brought under Rule 12(b)(1) differs from that of a motion brought under Rule 12(b)(6) in several respects. For one thing, a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Id.* (citing *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). In addition, "the court must scrutinize the

8

plaintiff's allegations more closely" when considering dismissal for lack of jurisdiction pursuant to Rule 12(b)(1) than it would when considering dismissal for failure to state a claim pursuant to Rule 12(b)(6). *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citing *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)). Just as with a motion brought under Rule 12(b)(6), however, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

### C. Application Of The Governing Legal Standards To Pro Se Parties

Finally, this Court must be mindful that Tyson is proceeding in this matter pro se, and that the pleadings of pro se parties are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009). That is, "even a pro se plaintiff must meet his burden of stating a claim for relief." *Horsey v. U.S. Dep't of State*, 170 F. Supp. 3d 256, 263–64 (D.D.C. 2016).

## III. ANALYSIS

As noted above, Tyson's complaint asserts claims for discrimination and retaliation under the Rehabilitation Act, which prohibits the Postal Service and other government entities from discriminating against individuals with disabilities. *See* 29

U.S.C. § 794(a); *West v. Potter*, 540 F. Supp. 2d 91, 96–97 (D.D.C. 2008). "Although [Tyson] does not mention the Rehabilitation Act, proceedings under section 501(b) of the Rehabilitation Act are the exclusive remedy for federal employees alleging disability discrimination by a federal agency." *Porter v. Sebelius*, 944 F. Supp. 2d 65, 67 n.1 (D.D.C. 2013) (citing *Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003)). As explained below, this Court agrees with USPS that Tyson's discrimination claim must be dismissed because the complaint does not allege that Tyson suffered a cognizable adverse employment action, and his retaliation claim must be dismissed because he failed to exhaust his administrative remedies. Therefore, the USPS's motion to dismiss Tyson's entire complaint must be granted.[8]

### A. Tyson's Discrimination Claim Fails Because He Did Not Suffer Any Adverse Action

In order to state a discrimination claim under the Rehabilitation Act, "a plaintiff must allege facts sufficient to show that he or she (1) had a disability within the meaning of the statute, (2) was qualified for the position with or without a reasonable accommodation, and (3) suffered an adverse employment action because of his or her disability." *Badwal v. Bd. of Trustees of the Univ. of D.C.*, 139 F. Supp. 3d 295, 309 (D.D.C. 2015) (citing *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 154 (D.D.C. 2013)); *see also Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 68 (D.D.C. 2012) ("Allegations of discrimination and retaliation under the Rehabilitation Act are

---

[8] To the extent that Tyson attempts to state an additional claim under the Whistle Blower Protection Act, 5 U.S.C. § 2302(b)(8) (*see* Compl. at 5 ¶ 4), it is clear that this Court lacks jurisdiction to hear that claim, because that act requires an employee to "exhaust two layers of administrative remedies: first before the Office of Special Counsel, and then, if still aggrieved, before the Merit Systems Protection Board[,]" before proceeding to court. *Gammill v. U.S. Dep't of Educ.*, 989 F. Supp. 2d 118, 121 (D.D.C. 2013) (citing 5 U.S.C. § 1214(a)). Tyson does not allege that he has completed either of these steps.

analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).") (citations omitted).[9]

Here, it is unclear in the first instance whether Tyson has pled sufficient facts to establish that he is a qualified person with a disability under the Rehabilitation Act, as he neither identifies his disability nor describes whether (or how) his disability affects his ability to work. (*See generally* Compl.) Nevertheless, the Court proceeds as if Tyson is disabled for Rehabilitation Act purposes, in any event, because it is clear to this Court that Tyson has not suffered any actionable adverse action.

For purposes of a discrimination claim, an adverse employment action typically means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks and citations omitted). The harm to a plaintiff must be "objectively tangible," such as economic harm suffered as the result of losing pay. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citation omitted). Thus, "purely subjective injuries, such as dissatisfaction with a reassignment . . . , or public humiliation or loss of reputation . . . are not adverse actions." *Id*. at 1130–31 (citations omitted).

---

[9] Due to the substantial similarity between the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, cases interpreting the ADA are equally applicable when analyzing a claim under the Rehabilitation Act. *See Jones v. Univ. of D.C.*, 505 F. Supp. 2d 78, 81 n.1 (D.D.C. 2007); *see also Dave v. Lanier*, 681 F. Supp. 2d 68, 73 n.4 (D.D.C. 2010) ("The Rehabilitation Act . . . is to be interpreted coterminously with the ADA."); *Zeigler v. Potter*, 641 F. Supp. 2d 25, 29 (D.D.C. 2009) ("Because the Rehabilitation Act explicitly incorporates the standards of the Americans with Disabilities Act . . . , 42 U.S.C. 12111 *et seq*., *see* 29 U.S.C. § 794(a), courts have found that it provides a cause of action for retaliation[.]"), *aff'd,* No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010).

The sole employment action that is alleged in Tyson's complaint is the Notice of 7-Day Suspension that the Postal Service allegedly issued to Tyson on June 3, 2015. (*See* Compl. at 5–6 ¶ 6; Suspension Notice.) Notably, the complaint does not allege that Tyson actually served the noticed suspension; that he lost any pay; or that he suffered any change (significant or otherwise) in job responsibilities or benefits as a result of the issuance of this notice. And, in fact, as USPS emphasizes (*see* Def. Mem. at 8–11), it appears that "in settlement of [Tyson's] . . . grievance, management agreed to rescind and remove his June 13, 2015 suspension (Notice of 7-Day Suspension) from all records and files." (Final Agency Decision at 2.)[10]

It is clear beyond cavil that a proposed suspension that is never served and is later rescinded does not constitute an adverse action for purposes of an employment discrimination claim. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (noting that "courts have been unwilling to find adverse actions where the suspension is not actually served"); *Jouanny v. Embassy of France in the U.S.*, No. 16-cv-00135, 2017 WL 2455023, at *5 (D.D.C. June 5, 2017) (finding that the plaintiff had not suffered an adverse action for the purpose of his discrimination claim when employer rescinded its notice of termination); *see also McNair v. District of Columbia*, 903 F. Supp. 2d 71, 75–76 (D.D.C. 2012) ("A long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse[.]"). And in the absence of an allegation that asserts a cognizable adverse action, Tyson's complaint fails to state a plausible claim of disability discrimination. *See, e.g.*, *Baloch v. Kempthorne*, 550 F.3d

---

[10] This Court takes judicial notice of the administrative opinion. *See Vasser*, 228 F. Supp. 3d at 9.

12

1191, 1198–99 (D.C. Cir. 2008); *Buie v. Berrien*, 85 F. Supp. 3d 161, 177–79 (D.D.C. 2015).

### B. This Court Lacks Jurisdiction Over Tyson's Retaliation Claim Because Tyson Did Not Exhaust His Administrative Remedies

"Federal employees may file a . . . Rehabilitation Act action in federal court only after exhausting their administrative remedies[.]" *Mahoney*, 824 F. Supp. 2d at 58 (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). This is because, as explained above, exhaustion of administrative remedies is mandatory and jurisdictional in the context of the Rehabilitation Act claims, and a court has no choice but to dismiss any unexhausted Rehabilitation Act claim for lack of subject-matter jurisdiction. *See Spinelli*, 446 F.3d at 162.[11]

The exhaustion issue in the instant case need not detain this Court for long. In addition to the fact that Tyson's administrative filings create manifest uncertainty about whether or not he intended to bring a retaliation claim at the administrative level to begin with, (*see supra* Part I.B n.9), in the brief that Tyson filed in this Court in opposition to the Postal Service's motion to dismiss, Tyson *concedes* that he did *not* pursue administrative remedies with respect to the retaliation claim. (*See* Pl.'s Opp'n at 4 ¶ 5 ("Defendant states Plaintiff fail[ed] to raise retaliation in his administrative [complaint], I concur[].."); *see also* Final Agency Decision at 2 ("During the course of the investigation, the complainant withdrew his claim of retaliation.") Tyson's

---

[11] In arguing that Rule 12(b)(6) governs its exhaustion argument rather than Rule 12(b)(1) (*see* Def.'s Mem. at 14 n.5), the Postal Service appears to have overlooked the difference between failure to exhaust under Title VII, which is not jurisdictional, and lack of exhaustion under the Retaliation Act, which is a jurisdictional defect. *See Mahoney*, 824 F. Supp. 2d at 58.

admission is dispositive of the exhaustion issue in this case.[12] Thus, Tyson's argument about *why* he failed to exhaust his administrative remedies—that "this is a completely new case, one that has new revelations" (Pl.'s Opp'n at 4 ¶ 5)—is irrelevant. Tyson's concession that he did not exhaust gives this Court no choice but to dismiss Tyson's retaliation claim for lack of subject matter jurisdiction. *See Spinelli*, 446 F.3d at 162.[13]

## IV.  CONCLUSION

This Court finds that Tyson fails to state an actionable claim of disability discrimination, that he failed to exhaust his administrative remedies for his retaliation claim, and, alternatively, that he fails to state an actionable claim of retaliation.

---

[12] Absent this admission, it theoretically possible that neither Tyson's ambivalence at the administrative level nor the agency's express finding that he withdrew his retaliation claim would be sufficient to answer the exhaustion question. *See Crawford v. Duke*, 867 F.3d 103 (D.C. Cir. 2017) (requiring district court to construe broadly a plaintiff's administrative complaint for exhaustion purposes, and holding that plaintiff had exhausted this administrative remedies even when he did not expressly refer to the claim at issue in the body of his administrative complaint and the agency did not include that claim in its investigation). Due to Tyson's own admission, such possibility does not present itself in the instant case.

[13] For what it's worth, it appears that even if this Court had jurisdiction to entertain Tyson's retaliation claim, that claim would likely falter on the grounds that Tyson's complaint contains no discernable reference to any protected activity. (*See* Def.'s Mem. at 13.) To state a retaliation claim under the Rehabilitation Act, a plaintiff must plead facts showing that he "engaged in statutorily protected activity[,]" *Badwal*, 139 F. Supp. 3d at 318, and as far as this Court can tell, "voice recording[] a threat" (Compl. at 1 ¶ 1) is not an "act or practice made unlawful by" the Rehabilitation Act. *See* 42 U.S.C. § 12112 (making unlawful "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment"). Moreover, the only protected activity that Tyson alleges—his filing an administrative charge of discrimination, *see Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)—occurred *after* the alleged retaliation. (*See* Compl. at 1 ¶ 1 (alleging that he filed an administrative complaint of discrimination).) *See Marshall v. Potter*, 634 F. Supp. 2d 66, 73 (D.D.C. 2009) ("In this case, plaintiff cannot make out a *prima facie* case of retaliation because the only protected activity identified in the record—the bringing of an EEO charge and participation in the subsequent EEO proceeding—did not occur until *after* plaintiff had been terminated."); *see also, e.g.*, *Salak v. Pruitt*, No. 15-cv-2237, slip op. at 18–28 (D.D.C. Sept. 30, 2017).

14

Therefore, as stated in the accompanying Order, the Postal Service's [12] Motion to Dismiss is **GRANTED**.

DATE:  September 30, 2017         *Ketanji Brown Jackson*
                                  KETANJI BROWN JACKSON
                                  United States District Judge